IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

EARL D. SMITH,                          )
                                        )
          Plaintiff,                    )
                                        )
          vs.                           )     Civil Action No. 06-483
                                        )
MICHAEL J. ASTRUE,                      )
Commissioner of Social Security,        )
                                        )
          Defendant.                    )

## MEMORANDUM OPINION

### I.    INTRODUCTION

Pending before the Court are cross-motions for summary judgment filed by Plaintiff Earl D. Smith and Defendant Michael J. Astrue, Commissioner of Social Security.[1]  Plaintiff seeks review of a final decision by the Commissioner denying his claim for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*[2]  For the reasons discussed below, Plaintiff's motion is granted insofar as he seeks remand to the Commissioner for further consideration and Defendant's motion is denied.

---

[1]     Pursuant to Fed. R. Civ. P. 23(d)(1), Michael J. Astrue, who became Commissioner of Social Security on February 12, 2007, is substituted for Jo Anne B. Barnhart as appellee in this action; *see also* 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.")

[2]     To be granted a period of disability and receive disability insurance benefits, a claimant must show that he contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he was last insured.  42 U.S.C. § 423(a).

## II.   BACKGROUND

### A.   Factual Background

Beginning in 1986, Earl Smith was employed as a corrections officer at SCI Graterford in Philadelphia, Pennsylvania. (Certified Copy of Transcript of Proceedings before the Social Security Administration, Docket No. 4, "Tr.," at 56.) On December 12, 1997, while on the job, Mr. Smith was injured when the vehicle he was driving hit a bump, causing the driver's seat to collapse.  He was thrown backward, stressing his neck and back. Following the accident, he developed pain in his neck with headaches, pain radiating into both shoulders with associated numbness, and pain in his low back, also with numbness.  (Tr. 266.)

On January 21, 1998, Mr. Smith's car was hit from behind, aggravating his injury.  He began treating with Dr. John Bomalaski on February 9, 1998, whose primary diagnoses included cervical, thoracic, and lumbar strain and sprain.    (Tr. 268.)    He was prescribed vicodin, daypro,[3] and cortisone/novocaine injections in his left shoulder; he also underwent a number of tests such as MRIs, EMGs, and nerve conduction studies.  (Tr. 268-269.)

On June 15, 1998, at Dr. Bomalaski's recommendation, Mr. Smith

---

[3] Vicodin (a combination of acetaminophen and hydrocodone) is used to treat moderate to moderately severe pain.  Daypro (oxaprozin) is one of a class of medications called nonsteroidal anti-inflammatory medications (NSAIDs). It works by stopping the body's production of a substance that causes pain, tenderness, swelling, stiffness, fever, and inflammation.  See the National Institute of Medicine's on-line website, Medline Plus, at www.nlm.nih.gov/medlineplus/druginfo, last visited April 2, 2007.

consulted with Dr. Jeffrey S. Yablon, a neurosurgeon, who began treating him with epidural steroid injections. (Tr. 269.) When those proved of little help, Mr. Smith underwent surgical treatment with anterior cervical disc removal and fusion of his C5-C6 and C6-C7 vertebrae. (Id.)

Mr. Smith's pain continued despite the surgery. When Dr. Bomalaski re-evaluated him on June 21, 2001, his diagnoses included persistent cervicalgia (neck pain), status post cervical disc removal and fusion due to disc herniations with associated spinal stenosis;[4] cervical spinal stenosis, disc herniations at C5-C6 and C6-C7; left C5 radiculopathy;[5] and lumbar sprain with persistent myofascitis.[6] (Tr. 269.)

On August 17, 2000, Mr. Smith filed an application for disability insurance benefits, alleging disability as of December 22, 1997. Administrative Law Judge ("ALJ") James Bukes issued a

---

[4]  Spinal stenosis is defined as "the narrowing of the vertebral canal, nerve root canals, or intervertebral foramina of the lumbar spine caused by encroachment of bone upon the space." See DORLANDS ILLUSTRATED MEDICAL DICTIONARY at www.mercksource.com., last visited April 2, 2007. Symptoms are caused by compression of the cauda equina (the spinal roots descending from the lower part of the spinal cord) and include pain, paresthesias (abnormal touch sensations, often in the absence of an external stimulus), and neurogenic limping or lameness. DORLANDS, id.

[5]  Radiculopathy is defined as any disease of the nerve roots. See DORLANDS ILLUSTRATED MEDICAL DICTIONARY at www.mercksource.com.

[6]  Myofascitis is inflammation of a muscle and its fascia (a sheet or band of fibrous tissue), particularly of the fascial insertion of muscle to bone. See DORLANDS ILLUSTRATED MEDICAL DICTIONARY at www.mercksource.com.

decision regarding that application on January 24, 2002, denying benefits, which was affirmed by the Social Security Appeals Council on June 25, 2002.   Mr. Smith did not seek higher review of that decision in the district court. (Tr. 34.)

B.   Procedural Background

On June 25, 2002, Mr. Smith filed a second application for DIB, claiming the same onset date.   (Tr. 129-132.)   In a disability report dated August 1, 2002, Mr. Smith asserted that he was unable to work due to permanent injuries to his cervical and lumbar back areas, with nerve damage that affected his arms and legs. He stated he could not lift more than five pounds, could not sit or stand "for any length of time," and had problems moving his neck and reaching overhead. (Tr. 146.)

An initial disability determination dated January 23, 2003, found that he was disabled.  (Tr. 106-107.)  In an undated letter, Mr. Smith was advised that a state agency medical evaluation had concluded he satisfied the medical requirements for showing that he became disabled as of September 1, 2002.   (Tr. 114-115.)   A subsequent determination on June 9, 2003, found that he was not disabled (Tr. 108-109), and he was so advised on the same date. (Tr. 116-119.)

On June 25, 2003, Plaintiff timely requested a hearing before an ALJ; Judge Bukes was again assigned to the case. On May 18, 2004, a hearing was held at which Plaintiff was represented by

4

counsel. Judge Bukes issued his decision on July 26, 2004, again denying benefits. (Tr. 34-42.) In an undated letter, the Social Security Appeals Council informed Mr. Smith that it had declined to review the ALJ's decision, finding no error of law or abuse of discretion and concluding the decision was based on substantial evidence to support the ALJ's findings. (Tr. 6-9.) Therefore, the July 26, 2004 opinion became the final decision of the Commissioner for purposes of review. 42 U.S.C. § 405(h); Rutherford v. Barnhart, 399 F.3d 546, 549-550 (3d Cir. 2005), citing Sims v. Apfel, 530 U.S. 103, 107 (2000). Plaintiff filed suit in this Court on April 12, 2006, seeking judicial review of the ALJ's decision.[7]

C. Jurisdiction

This Court has jurisdiction by virtue of 42 U.S.C. § 1383(c)(3) (incorporating 42 U.S.C. § 405(g)) which provides that an individual may obtain judicial review of any final decision of the Commissioner by bringing a civil action in the district court of the United States for the judicial district in which the plaintiff resides.

III. STANDARD OF REVIEW

The scope of review by this Court is limited to determining

---

[7] The Court Transcript Index prepared by the Social Security Administration notes that the Appeals Council affirmed the ALJ's decision on March 24, 2006, a date which the Court has been unable to independently verify. Defendant does not object to the timeliness of Mr. Smith's suit filed in this Court.

5

whether the Commissioner applied the correct legal standards and whether the record, as a whole, contains substantial evidence to support the Commissioner's findings of fact. 42 U.S.C. § 405(g); Richardson v. Perales, 402 U.S. 389 (1971); Schaudeck v. Comm'r of Soc. Sec. Admin., 181 F.3d 429, 431 (3d Cir. 1999). Findings of fact by the Commissioner are considered conclusive if they are supported by "substantial evidence," a standard which has been described as requiring more than a "mere scintilla" of evidence, that is, equivalent to "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, id. at 401. "A single piece of evidence will not satisfy the substantiality test if the [ALJ] ignores, or fails to resolve a conflict, created by countervailing evidence." Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983).

This Court does not undertake *de novo* review of the decision and does not re-weigh the evidence presented to the Commissioner. Schoengarth v. Barnhart, 416 F. Supp.2d 260, 265 (D. Del. 2006), *citing* Monsour Medical Center v. Heckler, 806 F.2d 1185, 1190 (3d Cir. 1986) (the substantial evidence standard is deferential, including deference to inferences drawn from the facts if they, in turn, are supported by substantial evidence.) If the decision is supported by substantial evidence, the Court must affirm the decision, even if the record contains evidence which would support a contrary conclusion. Panetis v. Barnhart, No. 03-3416, 2004 U.S.

App. LEXIS 8159, *3 (3d Cir. Apr. 26, 2004), *citing* Simmonds v. Heckler, 807 F.2d 54, 58 (3rd Cir. 1986), and Sykes v. Apfel, 228 F.3d 259, 262 (3rd Cir. 2000).

## IV.  ANALYSIS

### A.   The ALJ's Determination

In determining whether a claimant is eligible for disability insurance benefits, the burden is on the claimant to show that he has a medically determinable physical or mental impairment (or combination of such impairments) which is so severe he is unable to pursue substantial gainful employment[8] currently existing in the national economy.  The impairment must be one which is expected to result in death or to have lasted or be expected to last for not less than twelve months.  42 U.S.C. § 1382c(a)(3)(C)(I); Morales v. Apfel, 225 F.3d 310, 315-316 (3d Cir. 2000).

To determine a claimant's rights to DIB,[9] the ALJ conducts a formal five-step evaluation:

> (1)  if the claimant is working or doing substantial gainful activity, he cannot be considered disabled;

---

[8]  According to 20 C.F.R. § 404.1572, substantial employment is defined as "work activity that involves doing significant physical or mental activities. . . . Work may be substantial even if it is done on a part-time basis."  "Gainful work activity" is the kind of work activity usually done for pay or profit.

[9]  The same test is used to determine disability for purposes of receiving either DIB or supplemental security income benefits.  Burns v. Barnhart, 312 F.3d 113, 119, n1 (3d Cir. 2002).  Therefore, courts routinely consider case law developed under either type of benefits.

(2) if the claimant does not suffer from a severe impairment or combination of impairments that significantly limits his ability to do basic work activity, he is not disabled;

(3) if the claimant does suffer from a severe impairment which meets or equals criteria for an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings") and the condition has lasted or is expected to last continually for at least twelve months, the claimant is considered disabled;

(4) if the claimant retains sufficient residual functional capacity ("RFC")[10] to perform his past relevant work, he is not disabled; and

(5) if, taking into account the claimant's RFC, age, education, and past work experience, the claimant can perform other work that exists in the local, regional or national economy, he is not disabled.

20 C.F.R. § 404.1520(a)(4); see also Morales, 225 F.3d at 316.

In steps one, two, and four, the burden is on the claimant to present evidence to support his position that he is entitled to Social Security benefits, while in the fifth step the burden shifts to the Commissioner to show that the claimant is capable of performing work which is available in the national economy.[11] Sykes v. Apfel, 228 F.3d 259, 263 (3d Cir. 2000).

As a preliminary matter, the ALJ found no basis to reopen or

---

[10] Briefly stated, residual functional capacity is the most a claimant can do despite her recognized limitations. Social Security Ruling 96-9 defines RFC as "the individual's maximum remaining ability to perform work on a regular and continuing basis, i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule."

[11] Step three involves a conclusive presumption based on the listings, therefore, neither party bears the burden of proof at that stage. Sykes, 228 F.3d at 263, n2, citing Bowen v. Yuckert, 482 U.S. 137, 146-147 n5 (1987).

revise any of his previous conclusions regarding Plaintiff's prior application for DIB. (Tr. 34.) Because Mr. Smith remained insured for disability purposes only through December 31, 2002, Judge Bukes noted that he must show his disability began on or prior to this date, leaving a "rather limited window of adjudication in this case," i.e., from January 24, 2002 (the date of the previous decision), through December 31, 2002. (Tr. 34.)   Mr. Smith does not object to this analysis in his brief in support of his motion for summary judgment, and the Court agrees Judge Bukes properly interpreted the applicable law.   See 20 C.F.R. § 404.957(c)(1); Tobak v. Apfel, 195 F.3d 183, 186 (3d Cir. 1999).   An ALJ's decision not to reopen a claimant's prior claim is discretionary, and is not subject to judicial review by this Court. Tobak, id. at 187, citing Califano v. Sanders, 430 U.S. 99, 107-109 (1977).

Following the prescribed analysis, Judge Bukes first concluded that Mr. Smith had not engaged in substantial gainful activity since his alleged onset date of December 22, 1997. (Tr. 36.)   In resolving step two in Plaintiff's favor, the ALJ found that he suffered from degenerative disc disease of the cervical spine, with status post cervical fusion, and lumbosacral strain.   He further concluded that these were "severe impairments" as that term is defined by the Social Security Administration.[12]   (Tr. 36.)

---

[12]   See 20 C.F.R. §§ 404.1520(c), 404.1521(a), and 140.1521(b), stating that a physical impairment is severe only if it significantly limits the claimant's "ability to do basic work activities," i.e.,

9

At step three, the ALJ concluded that none of Plaintiff's impairments satisfied any of the criteria in the relevant Listings, i.e., Listing 1.04 (disorders of the spine) inasmuch as he did not present significant neurological signs, signs of significant nerve root compression, or such severe spinal stenosis that his ability to ambulate was affected. (Tr. 15-16.)  At step four, the ALJ concluded Mr. Smith could not perform his past relevant work as a corrections officer, which was described by William Reed, Ph.D., the vocation expert ("VE") who testified at the hearing, as semi-skilled and requiring a medium level of exertion.  (Tr.  39.) However, relying on Dr. Reed's testimony, the ALJ concluded that Mr. Smith was capable of performing "a significant range" of light work[13] which did not involve more than occasional overhead reaching or more than occasional postural movements.  (Tr. 39.)  Such jobs available in the local and national economies, according to the VE, included cashier or office machine operator.  (Tr. 40.)  Therefore,

---

"abilities and aptitudes necessary to do most jobs, including, for example, walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling," as compared to "a slight abnormality" which has such a minimal effect that it would not be expected to interfere with the claimant's ability to work, regardless of his age, education, or work experience.  Yuckert, 482 U.S. at 149-151.  The claimant has the burden of showing the impairment is severe.  Id. at 146, n5.

[13] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. It may also involve a good deal of walking or standing, or sitting most of the time with some pushing and pulling of arm or leg controls. The ability to do light work subsumes the ability to perform sedentary work unless there are other limiting factors, e.g., the inability to sit for long periods of time.  See 20 C.F.R. § 404.1567(b).

based on his status as an individual closely approaching advanced age[14] at the date last insured, with a high school education, a semi-skilled work history, and a lack of transferable skills, together with the medical evidence of record and the testimony of the VE, the ALJ determined at step five that Mr. Smith was not disabled and, consequently, not entitled to benefits. (Tr. 40.)

We turn to the arguments raised by Plaintiff, contending that the ALJ erred in this analysis for two reasons.

      1.    *Alleged Failure to Consider All Plaintiff's Diagnoses*: Plaintiff first argues that the ALJ failed to fully evaluate all of his impairments documented in the medical evidence, specifically the "separate and distinct impairment of spinal myofascitis." Instead, the ALJ erroneously treated myofascitis as "one in the same" with degenerative disc disease of the cervical spine, status post cervical fusion, and lumbosacral strain. (Plaintiff's Brief in Support of Motion for Summary Judgment, Docket No. 8, "Plf.'s Brief," at 13.)

In response, Defendant argues that to the contrary, the ALJ considered Plaintiff's myofascitis in the prior decision and found

---

[14] Plaintiff was 49 years old as of December 31, 2002, his date last insured, making him a younger person according to Social Security regulations, i.e., under 50 years old, by some two weeks. 20 C.F.R. § 404.1563(c). The Social Security regulations provide that age categories are not to be applied "mechanically in a borderline situation" (20 C.F.R. § 404.1563(b)), meaning Mr. Smith could be considered a "person closely approaching advanced age," i.e., between 50 and 54 years of age, when evaluating the cumulative impact of all the factors of his case. 20 C.F.R. § 404.1563(d).

that it was not severe. (Defendant's Brief in Support of Summary Judgment, Docket No. 10, "Def.'s Brief," at 11.) All medical evidence pertaining to this diagnosis, according to Defendant, dates from before January 24, 2002, and some of Dr. Bomalaski's medical records from the relevant period do not even refer to this impairment. (Id. at 12-13.)

We agree with Plaintiff that the ALJ did not address the diagnosis of myofascitis in his decision of July 26, 2004, but we cannot agree the ALJ assumed this condition was "one in the same" with his disorders of the spine.[15]  That is, because the ALJ did not mention this diagnosis, the Court cannot determine if he erred by consolidating an inflammatory condition with spinal impairments or if he failed to consider the former condition at all.

It is well-established that the ALJ must have evaluated all relevant evidence and explained his reasons for rejecting any such evidence. Burns v. Barnhart, 312 F.3d 113, 129 (3d Cir. 2002) (citations omitted); Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981) (in addition to explaining the evidence which supported his decision, the ALJ must explain what evidence was rejected.) While

---

[15]   The Court explicitly makes no finding on the question of whether the diagnoses of myofascitis and degenerative disorders of the spine are related. We note only that since it appears from the medical definition of myofascitis that it is an inflammatory condition of muscle and fascia, Plaintiff may be correct in this regard. Similarly, the Court arrives at no conclusion with regard to Plaintiff's assertion that the diagnosis of myofascitis is supported by the "hallmark signs" of muscle spasms and trigger points. (Plf.'s Brief at 14.) The validity of such medical conclusions is beyond the scope of this Court's review.

an ALJ is not required "to make reference to every relevant treatment note in a case where the claimant ... has voluminous medical records," he is expected, however, "as the factfinder, to consider and evaluate the medical evidence in the record[.]" Fargnoli v. Massanari, 247 F.3d 34, 42 (3d Cir. 2001). Where factual evidence is not discussed in the decision, the reviewing court cannot give a "meaningful" review of the ALJ's conclusions. Fargnoli, id. at 40.

The Court is not persuaded by Defendant's arguments on this issue. First, he argues that because the ALJ stated he was incorporating his prior decision of January 24, 2002, into his decision of July 26, 2004, his earlier conclusion that Plaintiff's myofascitis was not severe shows that the ALJ "did consider all the relevant evidence." (Def.'s Brief at 11-12.) If this argument were applied by analogy to Plaintiff's other diagnoses, there would have been no reason for the ALJ to discuss degenerative disc disease or lumbosacral strain which were also considered in the earlier opinion. Moreover, such an argument disregards the possibility that although the medical evidence may have shown that Mr. Smith's myofascitis was not severe before January 24, 2002, his condition may have deteriorated before December 31, 2002, to the extent the impairment did become severe.

Second, contrary to Defendant's argument that the earlier decision considered "all the relevant evidence, including evidence

regarding Plaintiff's myofascitis" (Def.'s Brief at 11-12), this is clearly impossible. While we agree Mr. Smith was diagnosed with myofascitis before the ALJ issued his January 24, 2002 decision and the ALJ did consider that diagnosis therein, the transcript also includes numerous references to myofascitis during the relevant period. *See, e.g.*, office notes of February 12, 2002, reflecting, among others, diagnoses of "persistent cervicalgia, associated spinal stenosis, cervical spinal stenosis, disc herniations at C5-C6, C6-C7, radiculopathy [and], lumbar sprain with persistent myofascitis." (Tr. 260.) References to myofascitis also appear in Dr. Bomalaski's office notes of August 16 and December 4, 2001 (Tr. 265 and 261);[16] April 25, and August 13, 2002 (Tr. 256 and 254); and through at least May 13, 2003 (Tr. 243, 241, 238, 237.) Thus, there was evidence of a continuing impairment during the relevant period.

Third, under well-established controlling law, this Court cannot accept Defendant's argument that because no work-related limitations stemming from Plaintiff's myofascitis appear in the record, the impairment must be non-severe. (Def.'s Brief at 12.) Because the ALJ did not discuss the myofascitis diagnosis, we cannot determine if he considered it severe or non-severe. This

---

[16]    The Court recognizes that these notes pertain to the period covered by the ALJ's January 24, 2002 decision, however, according to that opinion, the last office notes from Dr. Bomalaski which the ALJ reviewed were from July 3, 2001. (Tr. 96.)

Court may not attempt to rectify an ALJ's failure to consider all the relevant and probative evidence by making its own independent analysis. Fargnoli, 247 F.3d at 44, n7. As the United States Court of Appeals for the Third Circuit has pointed out, such a practice contradicts the teaching of SEC v. Chenery Corp., 318 U.S. 80, 87 (1943), requiring that "the grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based." Fargnoli, id. Here, the ALJ failed to mention the medical notes concerning myofascitis, "leaving [the court] to wonder whether he considered and rejected them, considered and discounted them, or failed to consider them at all." Id. at 43-44. Thus, the Court cannot determine if the ALJ's findings were supported by substantial evidence.

In ascertaining a claimant's ability to engage in substantial gainful employment, the Social Security regulations require the ALJ to "consider the combined effect of *all* [the claimant's] impairments without regard to whether each alone is sufficiently severe." 20 C.F.R. § 404.1523 (emphasis added). That is, when assessing the effect of an individual's impairments on his ability to function, the ALJ must determine the impact of the combination of those impairments, rather than assessing the restricting effect of each impairment on his or her activity as if each impairment existed alone. Id.; *see also* Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 122 (3d Cir. 2000), remanding in part because

15

the ALJ failed to consider the combined effect of the claimant's multiple impairments, regardless of their severity.

      2.   *Failure to Properly Weigh Medical-Source Opinions:* Plaintiff contends that the ALJ failed to follow well-established case law and Social Security regulations which describe how an ALJ is to weigh the opinions of various medical sources.   Briefly stated, Mr. Smith argues that the ALJ improperly gave greater weight to the opinion of Dr. Yablon than to the weight of the opinions expressed by Dr. Bomalaski or Dr. Maria Henderson, a consultative physician who, like Dr. Bomalaski, concluded that Plaintiff was unable to perform a full range of even sedentary work.   (Plf.'s Brief at 15-19.)   In response, Defendant counters that, as reflected in the ALJ's detailed analysis, he did not err by giving greater weight to the opinion of Dr. Yablon over those of Drs. Bomalaski and Henderson.   (Def.'s Brief at 13-15.)

    The ALJ fully explained his reasoning for giving greater weight to the opinion of Dr. Yablon, that is, (1) he was Mr. Smith's "treating neurologist who has performed surgery on the claimant's cervical spine," and (2) the ALJ was not convinced that Dr. Bomalaski's clinical findings supported the restricted functional assessment he provided.   (Tr. 37; *see also* Tr. 171-176, a Medical Source Statement of Claimant's Ability to Perform Work-Related Activity completed by Dr. Bomalaski on October 3, 2002, concluding Plaintiff should be limited to sedentary work.)   If, as

it appears, however, the ALJ failed to consider Mr. Smith's diagnosis of myofascitis, he may have failed to give appropriate weight to Dr. Bomalaski's opinion as to the possible effects of that impairment.[17]

While an ALJ is not required to "use particular language or adhere to a particular format in conducting his analysis," there must be "sufficient development of the record and explanation of findings to permit meaningful review." Jones v. Barnhart, 364 F.3d 501, 505 (3d Cir. 2004). This Court cannot give meaningful review to the weight given to the medical opinions by the ALJ where an underlying impairment appears to have been omitted from consideration. On remand, this issue should also be reconsidered by the Commissioner, depending upon his determination of the effects, if any, of Mr. Smith's myofascitis on his residual functional capacity.

## V.   FURTHER PROCEEDINGS

Under 42 U.S.C. § 405(g), a district court may, at its discretion, affirm, modify or reverse the Secretary's final decision with or without remand for additional hearings. However, the reviewing court may award benefits "only when the administrative record of the case has been fully developed and when

---

[17]   Plaintiff also argues that spinal myofascitis is a condition outside Dr. Yablon's speciality but within that of Dr. Bomalaski. (Plf.'s Brief at 17.)   The Court offers no conclusion on this argument except to note that if this were true, it could affect the weight given to Dr. Bomalaski's medical opinion on this particular diagnosis.

17

substantial evidence on the record as a whole indicates that the plaintiff is disabled and entitled to benefits." <u>Krizon v. Barnhart</u>, 197 F. Supp.2d 279, 291 (W.D. Pa. 2002), *quoting* <u>Podedworney v. Harris</u>, 745 F.2d 210, 222 (3d Cir. 1984).

Because it is unclear from the ALJ's decision whether he considered the effects of spinal myofascitis on Plaintiff's residual functional capacity, this Court cannot determine if the ALJ's decision was based on substantial evidence. Consequently, we cannot determine if the ALJ correctly weighed the opinion of Dr. Bomalaski, the only physician to discuss this impairment.   We conclude remand for clarification and further analysis is the proper resolution.   An appropriate Order follows.

April ___3___ , 2007                    *William L. Standish*

                                        William L. Standish
                                  United States District Judge

cc:   James C. Ward
      Friday Porta Cox & Ward
      3220 West Liberty Avenue
      Suite 200
      Pittsburgh, PA 15216
      Email: jward@fridaylaw.com

      Paul Kovac
      United States Attorney's Office
      700 Grant Street
      Suite 4000
      Pittsburgh, PA 15219
      Email: paul.kovac@usdoj.gov